# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RAFAEL ROMERO | * | |
| Petitioner | * | |
| v | * | Civil Action No. JFM-13-36 |
| WARDEN | * | |
| Respondent | * | |

***

## MEMORANDUM

A response seeking denial of the above-captioned petition for writ of habeas corpus filed pursuant to 28 U.S.C. §2241 having been filed, this matter is now ripe for dispositive review. ECF No. 4. Petitioner has filed a traverse to the response. ECF No. 10. For the reasons below, the petition shall be denied.

### Background

At trial it was established that on September 6, 1988, petitioner (Romero) and his co-defendants were involved in a cocaine trafficking business which they undertook to protect with deadly force. *See United States v. Romero*, 897 F. 2d 47, 49-51 (2d Cir. 1990). The proof at trial consisted of testimony of a confidential informant and several DEA agents, evidence recovered in the search of the narcotics operation site, and various expert analyses. Romero and Rodriguez, Romero's co-defendant, arranged to sell cocaine to two DEA informants, and took them to a Manhattan apartment they used for a large-scale drug trafficking operation. Once in the apartment, Romero patted down the informants, searching for weapons or evidence of a police presence, and explained to them how the transaction would be conducted. The third defendant, Santos, lay in wait in a strategically-located hall closet, armed with a .357 Magnum revolver, as a look-out in case anything went wrong. After Rodriguez produced a one kilogram package of

cocaine to sell, one of the informants activated a beeper-like device, signaling the DEA team on the street below that the cocaine had been delivered. DEA agents then raided the apartment, arresting Romero. While performing a protective sweep of the apartment, a DEA agent opened the hall closet where Santos was lying in wait. Santos shot the agent in the face at point blank range, destroying half of his face, but failing to kill him. A gunfight ensued, injuring both Santos and one of the confidential informants. The injured informant identified Romero as the one who had been involved in the cocaine transaction. Romero had in his possession at the time of his arrest a rolled up dollar bill containing cocaine, a beeper, a receipt in a false name for the beeper, and a paper with what were identified as narcotics notations. After an extended struggle in the living room of the apartment, DEA agents subdued co-defendant Rodriguez and took him into custody, recovering another beeper, a notebook page with narcotics notations, and a telephone number that matched the number stored in Romero's beeper. Santos, who suffered wounds to the left palm and left thigh, was taken to the hospital and one of the agents read him his *Miranda* rights in Spanish and English. At the hospital, Santos told the emergency room nurse that he had been in a closet armed with a gun to serve as back-up in case anything went wrong in the course an of an expected business transaction.. A search of the apartment uncovered ballistics evidence, narcotics, and narcotics paraphernalia, as well as hollow-point .357 bullets and other ammunition. Romero did not testify at trial and he did not call any witnesses on his behalf.

After a jury trial, which began on March 6, 1989 and concluded on March 14, 1989, in the United States District Court for the Southern District of New York Romero, and two co-defendants, Rodriguez and Santos, were convicted of six separate crimes: (1) conspiring to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846 ("Count One"); (2) possession of approximately one kilogram of cocaine with intent to distribute it, in violation

of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B) ("Count Two"); (3) use of a firearm, namely, a .357 magnum revolver, during the course of a narcotics trafficking offense, in violation of 18 U.S.C. § 924(c) ("Count Three"); (4) assaulting a federal officer, namely, a Special Agent of the Drug Enforcement Agency (DEA), with a deadly weapon, in violation of 18 U.S.C. § 111 ("Count Four"); (5) conspiring to murder a federal officer, in violation of 18 U.S.C. § 1117 ("Count Five"); and (6) attempted murder of a federal officer in violation of 18 U.S.C. §§ 1111 and 1114 ("Count Six"). Santos was also convicted of receiving and possessing a firearm with a defaced serial number, in violation of 26 U.S.C. §§ 5861 (h) and 5871 ("Count Seven"). On May 25, 1989, the court sentenced Romero and his co-defendants to life imprisonment. Romero appealed, arguing, inter alia, that the evidence was insufficient. The Second Circuit Court of Appeals affirmed all the convictions and the Supreme Court denied certiorari. *See United States v. Romero*, 897 F.2d 47 (2d Cir.), cert denied, 497 U.S. 1010 (1990).

After the Second Circuit affirmed all his convictions, Romero filed several motions for post-conviction relief. On February 6, 1992, Romero filed his first motion pursuant to 28 U.S.C. §2255, which was denied on June 18, 1992, and was then affirmed by the Second Circuit. *See Romero v. United States*, 28 F. 3d 267 (2nd Cir. 1994). Romero filed his second 2255 motion on or about June 17, 1996, which was transferred to the Second Circuit by the District Court for purposes of authorization to consider a successive §2255 motion. *See* 28 U.S.C. § 2244(b)(3). On August 7, 2001, the Second Circuit denied the application to consider Romero's successive motion, finding he had no valid claim.

On April 29, 2002, Romero filed a third 2255 motion and again moved for an order authorizing the District Court to consider a successive motion. On May 19, 2003, the Second Circuit again refused authorization to consider the motion because it did not state newly

discovered evidence or a new rule of constitutional law. *See* 28 U.S.C. § 2255(h). On January 3, 2013, Romero, who is currently incarcerated FCI Cumberland, Maryland, filed the instant petition pursuant to 28 U.S.C. §2241.

**Petitioner's Claims**

In his petition Romero claims his conviction under 18 U.S.C. §924(c) is invalid due to a subsequent change in the law, citing *Bailey v. United States*, 516 U.S. 137 (1995) (ECF No. 1 at p. 3). He further contends the conviction and sentence are being executed in violation of his Fifth, Sixth, and Seventh Amendment rights (*Id*. at p. 19).

With respect to his first argument, Romero asserts that the holding in *Bailey* represents a retroactive change in the law which makes the conduct for which he was convicted no longer criminal. *Id*. at pp. 4 – 5. He further alleges that under *Bailey* the evidence produced at trial was insufficient to establish active employment of a weapon in relation to, or in connection with, the underlying drug offense. *Id*. at p. 6. He states that when the DEA agent was shot by Santiago he was in the custody of the other agents involved and under arrest before any shots were fired. *Id*. at pp. 6 – 7. Romero concludes that because the handgun was not actually used by him, his conviction under 18 U.S.C. §924(c) cannot stand in light of the holding in *Bailey*. He further contends that the evidence relied upon, Santiago's statement to an emergency room nurse that he was instructed to hide in a closet and shoot if there was any trouble, was insufficient to support Romero's conviction. *Id*. at pp. 8 – 9.

In his second argument Romero asserts that the cumulative constitutional errors in his trial and the failure of the courts to rule in his favor on his claims of innocence violate his right to a fair trial. ECF No. 1 at pp. 19 – 20. He claims it was clear that the conspiracy that formed the basis for his convictions "had long been terminated" because the agent was shot after Romero

was arrested and in the custody of the DEA. *Id*. at p. 20, citing *Pinkerton v. United States*, 328 U.S. 640, 646 (1946). Romero further contends that it was "never proven or established" who assaulted Agent Travers, who sustained a gunshot wound to his face. ECF No. 1 at p. 21. Romero argues that the trial court originally found that he had been placed under arrest before agent Travers was shot, but "reversed itself and found that as to the circumstances of the shooting, the jury could reasonably have found that [Romero] had foreknowledge that a co-defendant was positioned out of sight armed and ready for any possibilities." *Id*. Romero also asserts in the context of his second argument that his trial counsel was ineffective; the government failed to disclose exculpatory evidence; and the evidence used to convict him was insufficient. With respect to the sufficiency of the evidence, Romero asserts entitlement to review under the actual innocence exception because failure to review the claim would result in a fundamental miscarriage of justice.

**Standard of Review**

The threshold question presented here is whether this claim is properly raised in a § 2241 petition or is more properly construed under 28 U.S.C. §2255. A writ of habeas corpus pursuant to 28 U.S.C. §2241 and a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255 are separate and distinct mechanisms for obtaining post-conviction relief. A § 2241 petition attacks the manner in which a sentence is executed. *See* 28 U.S.C. §2241(a). By contrast, a §2255 motion challenges the validity of a conviction or sentence. *See In re Jones*, 226 F.3d 328, 332 (4th Cir. 2000); *In re Vial*, 115 F.3d 1192, 1194 n. 5 (4th Cir. 1997) (en banc).

Although a federal prisoner generally may not seek collateral relief from a conviction or sentence by way of §2241, there is an exception under the so-called "savings clause" in § 2255.[1]

---

[1] 28 U.S.C. §2255 provides in relevant part:

5

It provides a prisoner may seek relief under §2241 if the remedy under §2255 is "inadequate or ineffective to test the validity of his detention." 28 U.S.C. §2255. In *Jones,* the United States Court of Appeals for the Fourth Circuit held that § 2255 is inadequate and ineffective to test the legality of a conviction when: (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law. *Jones,* 226 F.3d at 333-34.

## Analysis

### *Bailey v. United States*[2]

The Supreme Court interpreted the meaning of the word "use" under 18 U.S.C. §924(c)(1) in *Bailey v. United States*, 516 U.S. 137 (1995). The statute imposes a five-year minimum sentence for any person who "during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm. 18 U.S.C. §924(c)(1). The issue concerned whether "evidence of the proximity and accessibility of a firearm to drugs or drug proceeds is alone sufficient to support a conviction for 'use' of a firearm during and in relation to a drug trafficking offense under . . . §924(c)(1)." *Bailey* 516 U.S. at 139 – 40. In holding that use requires more than a showing of mere possession, but requires proof of active employment of the firearm, the Court turned to the meaning of the word use:

---

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

2 *Bailey v. United States,* 516 U.S. 137 (1995).

6

> The word 'use' in the statute must be given its 'ordinary or natural' meaning, a meaning variously defined as 'to convert to one's service,' 'to employ,' 'to avail oneself of,' and 'to carry out a purpose or action by means of.'

*Bailey* at 145. The Court defined "active-employment" to include: "brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire a firearm." *Id*. at 148. The Court further noted that even a reference to a a firearm in an offender's possession could satisfy the requirements of §924(c)(1) and that "a reference to a firearm calculated to bring about a change in the circumstances of the predicate offense is a 'use,' just as the silent but obvious and forceful presence of a gun on a table can be a 'use.'" *Id.*

Turning now to the circumstances of Romero's offense, it is clear that the decision in *Bailey* had no effect on the validity of his conviction under §924(c)(1). Romero's argument that he cannot be held liable for "use" of a firearm because he was under arrest and thereby had abandoned the conspiracy is meritless. As observed by the Second Circuit Court of Appeals in its review of a similar argument raised by Romero on appeal:

> The evidence . . . indicates that there was a drug deal, that Romero and Rodriguez took many precautions against detection and arrest, that the apartment was strewn with ammunition in open view, and that Santos had been deliberately stationed in the closet. At the least, the jury could reasonably have found that Romero and Rodriguez knew that Santos was positioned out of sight, armed and ready to shoot. From this conclusion, a reasonable jury could infer that Santos's taking up a strategic position in the closet while Romero and Rodriguez conducted their narcotics business did not occur by chance, but rather was the result of a plan agreed to by all the defendants to kill anyone posing a threat to them or the business.

*United States v. Romero*, 897 F. 2d 47, 51 (2nd Cir. 1990). Further, Romero's claim he had abandoned the conspiracy is frivolous; the conspiracy between the three co-defendants did not end "until the last overt act of any of the conspirators." *Id*. at 52. The last overt act in the instant case was Santos's shooting of a federal agent. Moreover, Romero's arrest simply cannot be viewed as a voluntary act constituting abandonment of the conspiracy. It is beyond question that

7

the circumstances of Romero's case support a finding that he "used" a firearm and it is an exercise in sophistry to suggest the conduct of his co-conspirator cannot be attributed to him. *See Pinkerton v. United States*, 328 U.S. 640, 647 (1946) (conspirator can be held responsible for the substantive crimes committed by co-conspirators so long as the offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if he did not participate in the substantive crime). Because Romero's conviction under §924(c)(1) was unaffected by the holding in *Bailey*, he is not entitled to avail himself of the savings clause of 28 U.S.C. §2255 and habeas corpus relief is unavailable under 28 U.S.C. §2241. In short, §2255 is not inadequate to test the validity of Romero's conviction.

## Remaining Claims

Romero asserts entitlement to review of his claims regarding sufficiency of the evidence, ineffective assistance of counsel, and an alleged failure by the government to turn over exculpatory evidence under a theory of actual innocence.[3] "To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial." *Calderon v. Thompson,* 523 U.S. 538, (1998) (quoting *Schlup*, *v. Delo*, 513 U. S.298, 314, 324 (1995). New evidence may consist of "exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir.1999) (citation omitted). The new evidence must be evaluated with any other admissible evidence of guilt. *See Wilson v. Greene*, 155 F.3d 396, 404-05 (4th Cir. 1998). The new evidence must do more than undermine the finding of guilt; it must affirmatively demonstrate innocence. *See Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir.1999). To invoke the actual innocence exception to the procedural default doctrine, a defendant "must show that it

---

[3] It is clear that Romero's claims do not meet the requirements in *In re Jones*, 226 F.3d 328, as there has been no intervening change in the law making the conduct for which Romero was convicted no longer criminal.

is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327.

Romero has presented no new evidence demonstrating his innocence. His inclusion of an affidavit from a private investigator hired by Santos, stating that he could not locate evidence of the ballistic fragment that injured the DEA agent in the court files when they were searched 17 years after the trial occurred, is not evidence of his innocence and does not approach the standard of evidence required to satisfy the actual innocence exception. ECF No. 1. Thus, the claims asserted are not appropriately raised in a §2241 petition because they do not pertain to the execution of Romero's sentence; rather, the claims challenge the validity of the conviction itself.

## Conclusion

Romero has failed to demonstrate entitlement to review of his claims under 28 U.S.C. §2241, therefore habeas relief shall be denied. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U. S.C. §2253(c)(2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because this court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U. S.C.§ 2253(c)(2).

A separate order denying relief and a certificate of appealability follows.

  August 22, 2013                                       /s/
Date                                                 J. Frederick Motz
                                                      United States District Judge